FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  SEP 02 2016  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MICHAEL BONANO,

                              Plaintiff,

                -against-

SR. PAROLE OFFICER ILENE STANISZEWSKI,
WILLIAM MCCARTNEY, *Brooklyn II Bureau Chief*,
ANDREA W. EVANS, *NY State Parole Chairwoman*,
TERRENCE X. TRACY, *Parole Chief Counsel*,
AMANDA MEEKS, *Manhattan Drug Court Evaluator*,
FRANCIS J. CARUSO, *Ass't Director of Operations*,
and NY STATE DIVISION OF PAROLE,

                              Defendants.
----------------------------------------------------------------------X

                                        **REPORT AND RECOMMENDATION**
                                        **12 CV 5879 (DLI)(LB)**

**BLOOM, United States Magistrate Judge:**

On November 26, 2012, while incarcerated, plaintiff Michael Bonano filed this *pro se* action

pursuant to 42 U.S.C. § 1983. He alleges that defendants violated his constitutional rights in retaliation

for filing federal lawsuits. Specifically, plaintiff alleges that defendants retaliated against him when they

delayed and denied his application for early termination of his criminal sentence, miscalculated the

maximum expiration date of that sentence, and falsified his parole records in opposing his application for

a drug diversion program. By Orders dated August 29, 2013, and July 21, 2014, the Court dismissed some

of plaintiff's claims as time-barred and on immunity grounds. Defendants now move for summary

judgment on plaintiff's remaining claims. Chief Judge Dora L. Irizarry referred defendants' motion for

summary judgment to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the

reasons set forth below, it is recommended that defendants' motion for summary judgment should be

granted.

## BACKGROUND

The following facts are drawn from plaintiff's complaint as construed by the Court's July 21, 2014 Order, and the papers submitted by both parties on the instant motion, including defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts ("Defs.' 56.1.") and "plaintiff's Local Civil Rule 56.1 Statement of Material Facts in Response to defendants' Statement and Their Motion to Dismiss" ("Opp'n.") Unless stated otherwise, the facts set forth in defendants' 56.1 Statement are undisputed.

I.      Plaintiff's 2004 Sentence and Related Litigation

Plaintiff has a long history of drug addiction and interactions with the criminal justice system. (Pl. Dep. 17:16–24:14; 55:4–6; Defs.' 56.1 ¶¶ 10–20.) In 2004, plaintiff was convicted of Burglary in the Third Degree, Robbery in the Third Degree, and related charges under the pseudonym Anthony Cusamano, and was sentenced to 3.5 to 7 years imprisonment. (Defs.' 56.1 ¶ 15.) On March 10, 2004, plaintiff was sentenced to serve concurrent terms of 3.5 to 7 years imprisonment. (Defs.' 56.1 ¶ 15.) On January 10, 2007, plaintiff was released into the custody of the New York State Division of Parole[1] ("Parole Department"). (Id. ¶ 16.) His parole was subsequently revoked twice. (Id. ¶ 18.) On February 8, 2008, plaintiff was re-released to parole supervision subject to special conditions, one of which required his participation in a drug treatment program as directed by plaintiff's parole officer. (Id. ¶ 19.) At the time of plaintiff's release, his maximum expiration date[2] for the 2004 conviction was March 5, 2012. (Id.; Decl. of William McCartney ("McCartney Decl."), ECF No. 101, Ex. A.)

---

[1] In 2011, the New York State Division of Parole merged into the Department of Corrections and Community Supervision. (Defs.' 56.1 ¶ 1.) Collectively, these departments are referred to herein as the "Parole Department."

[2] Unless an inmate is released by the Parole Board or by conditional release, he will remain in custody until his "maximum expiration date." Boatswain v. New York, No. 12-CV-6078, 2012 WL 6589216, at *2 n.1 (E.D.N.Y. Dec. 17, 2012). If the inmate is released on parole supervision or post-release supervision, but was not sentenced to serve any determinate period on parole or post-release supervision, the maximum expiration date also serves as the last date of his supervision. See DOCCS, http://www.doccs.ny.gov/calendardatadefinitions.html (last visited Aug. 29, 2016). Plaintiff disputes that he has a maximum expiration date as his prior sentences were not merged into one. (Pl. 56.1 ¶ 19.)

While under parole supervision, plaintiff, on July 3, 2008, filed a complaint in this Court challenging the special conditions of his supervision. Cusamano v. Bullock, No. 08 CV 2737 ("the *Bullock* action"). The Court dismissed that complaint for failure to state a claim. Bullock, (ECF No. 3). Plaintiff initiated another lawsuit, on July 18, 2008, challenging the same special conditions, in the United States District Court for the Northern District of New York. Cusamano v. Alexander, No. 08 CV 0781 ("the *Alexander* action"). Two defendants in that action are named as defendants in the instant action: Parole Department Bureau Chief William McCartney and Senior Parole Officer ("SPO") Ilene Staniszewski. On June 5, 2009, plaintiff's claims against McCartney and Staniszewski were dismissed for plaintiff's failure to oppose those defendants' motion to dismiss and for failure to state a claim upon which relief can be granted. See Cusamano v. Alexander, 691 F. Supp. 2d 312, 315 (N.D.N.Y. 2009).

II.    Merits Termination Application

February 8, 2009 marked plaintiff's one-year anniversary of his release on parole supervision. (McCartney Decl. ¶ 8.) After one year of uninterrupted supervision, plaintiff became eligible to be considered for a merit, or early, termination of his 2004 sentence. (Defs.' 56.1 ¶ 30; N.Y. Exec. Law § 259-j(1) (2009).) Plaintiff's parole officer, Steve McClymont, was responsible for preparing and submitting the documents needed to consider plaintiff for the merit termination of his sentence. (Defs.' 56.1 ¶ 33.) On February 26, 2009, SPO Staniszewski noted in plaintiff's electronic parole records ("the chrono log") that McClymont's merit termination report was overdue. (Defs.' 56.1 ¶ 35.) In a March 18, 2009 entry to the chrono log, McClymont reported that plaintiff was securing a completion certificate from his drug program, and that plaintiff's drug test was negative. (Id. ¶ 36.) On April 3, 2009, SPO Staniszewski noted in the chrono log that McClymont had submitted the necessary documents, including a drug program completion certificate dated March 20, 2009 from the Center for Comprehensive Health Practice ("CCHP certificate"). (Id.)

Around this time, plaintiff relapsed into drug use. (Defs.' 56.1 ¶ 38.) His relapse violated a condition of his parole. (McCartney Decl., Ex. A.) Plaintiff recalls "hinting" to McClymont that he relapsed, (Pl. Dep. 111–12), but McClymont's March 18 and April 8, 2009 chrono log entries report that plaintiff denied illegal drug use. (Declaration of defendants' Counsel ("Counsel's Decl."), ECF No. 103, Ex. B at 130–31). On April 30, 2009, McClymont submitted plaintiff's merit termination application to Bureau Chief McCartney and McCartney, Staniszewski, and McClymont met to discuss the application. (Defs.' 56.1 ¶¶ 39, 40.) McCartney found the supporting documents—including the CCHP certificate—to be deficient proof of plaintiff's treatment in a drug program. (Id. ¶ 41.) On May 4, 2009, Staniszewski spoke to Annie Mendelsohn, the lead counselor at CCHP, who confirmed plaintiff's completion of both drug treatment and anti-aggression programs. (Id. ¶ 42; Staniszewski Decl. ¶¶ 12, 14, ECF No. 102.) Two days later, plaintiff was arrested on new criminal charges. (Defs.' 56.1 ¶ 43.)

III.    Post-2009 Arrest

On May 15, 2009, Staniszewski noted plaintiff's May 6, 2009 arrest on the chrono log. (Id. ¶ 45.) Defendants assert that the Parole Department's computer system automatically defers consideration for merit termination of any applicant who is facing new criminal charges, and, in plaintiff's case, did so in four-month intervals until February 8, 2011. (Id. ¶ 46.) In a June 3, 2009 Violation of Release Report, McClymont reported that plaintiff had been arrested on suspicion of robbing a drug store and brandishing scissors at the assistant store manager. (Id. ¶ 47.) Staniszewski endorsed that report and recommended "[n]o delinquency pending court action," deferring any parole revocation hearing until further developments in the proceedings stemming from plaintiff's May 2009 arrest. (Id.) As of June 11, 2009, McCartney and the Commissioner of the Board of Parole approved Staniszewski's recommendation.[3] (Id.; McCartney Decl. ¶ 32, Ex. H at 181–82.)

---

[3] Plaintiff quarrels with defendants' use of the word "deferral," interpreting it to mean that the Parole Department commenced a revocation proceeding and then adjourned or postponed it. (Opp. at ¶ 47.) Based on that reading, he argues that

IV.    Judicial Diversion Program and Conviction

Prior to entering a guilty plea or proceeding to trial on his new criminal charges, plaintiff applied to the Judicial Diversion Program of the Manhattan Drug Treatment Court ("MDTC"), pursuant to Section 216.05 of the New York Criminal Procedure Law. (Counsel's Decl., Ex. M.) Plaintiff agreed that if he was accepted in to the Judicial Diversion Program, he would, as an alternative to incarceration, participate in the long-term substance abuse treatment program and plead guilty to the 2009 charges. N.Y. Crim. Proc. Law § 216.05; (McCartney Decl. ¶ 34). In applying to the diversion program, he revealed to the state court that his crack cocaine addiction had fueled his entire criminal history. (Counsel's Decl., Ex. M.) Over the New York County District Attorney's Office's "strong objection", plaintiff's application was referred for consideration. (Id.)

MDTC Case Manager Amanda Meeks was assigned to evaluate plaintiff's application. (Defs.' 56.1 ¶ 54.) Meeks interviewed Staniszewski and plaintiff's drug treatment providers, and reported her concerns about plaintiff's application to the MDTC on July 12, 2010. (Defs.' 56.1 ¶ 55; Staniszewski Decl., Ex. A.) Meeks' report found "serious concerns" as to whether plaintiff would benefit from the Judicial Diversion Program due to "his lack of compliance with parole, his denial of substance use and/or abuse issues with parole and his history of leaving substance abuse treatment against clinical advice." (Staniszewski Decl., Ex. A.) Separately, the Parole Department opposed plaintiff's application based on his extensive history of drug abuse and parole violations. (Counsel's Decl., Ex. N.) On July 14, 2010, based upon Meeks' report, the MDTC denied plaintiff's application, noting that the Parole Department

---

any stay of an ongoing revocation hearing would require his consent, and since he gave no such consent, the Parole Department's "deferral" violated his rights (Id.) Contrary to plaintiff's interpretation, defendants maintain that the use of the word "deferral" here means that defendants did *not* initiate a revocation hearing against plaintiff at that time. (Staniszewski Decl. ¶ 18, ECF No. 102 (alternatively describing deferral as a recommendation that revocation proceedings should not be *commenced*).) The record confirms that based upon Staniszewski's recommendation, a parole warrant, which initiates parole revocation proceedings, did not issue upon plaintiff's May 2009 arrest. (McCartney Decl., Ex. H at 000184); see N.Y. Exec. Law § 259-i(3)(c), (f) (providing that a preliminary hearing must be held within 15 days of the execution of a parole violation warrant and a revocation hearing shall commence within 90 days of the probable cause finding).

opposed plaintiff's application, and further noting the likelihood that the Parole Department would revoke plaintiff's parole if he pleaded guilty, even though the plea was necessary for his participation in the Judicial Diversion Program. (Id. Plaintiff did not seek review of the denial of his application to the Judicial Diversion Program. (Pl. Dep. at 122:6–17.)

As the MDTC denied plaintiff's application to participate in the Judicial Diversion Program, plaintiff chose not to plead guilty and he proceeded to trial on the criminal charges stemming from his 2009 arrest. (Defs.' 56.1 ¶ 57.) Plaintiff was convicted on the 2009 charges of Criminal Possession of a Weapon in the Third Degree and Burglary in the Third Degree. (Id. On March 31, 2011, plaintiff was sentenced to three to six year's imprisonment for each conviction, to run consecutively. (Counsel's Decl., Ex. E.) Plaintiff failed to perfect his appeal from this conviction. (Defs.' 56.1 ¶ 59.)

V.    Parole Revocation Hearing and Sentence Recalculation

On April 14, 2011, the Board of Parole issued plaintiff a Notice of Final Declaration of Delinquency, notifying him that his recent conviction triggered the automatic revocation of his parole, pursuant to New York Executive Law Section 259-i(3)(d)(iii). (McCartney Decl., Ex. I; Defs.' 56.1 ¶ 60.) A May 6, 2009 delinquency date was retroactively established, meaning that the Parole Department deemed plaintiff's violation date to be the same as his most recent arrest. (See Defs.' 56.1 ¶ 60.) The Board's Final Declaration rendered plaintiff ineligible for a merit sentence termination. (Id.

Plaintiff returned to DOCCS's custody on April 14, 2011. (Counsel's Decl., Ex. O.) Upon his return, DOCCS recalculated plaintiff's maximum expiration date. (Id.) Taking into account the two consecutive three to six-year terms for plaintiff's most recent conviction, less 708 days jail time credit for the time plaintiff spent detained since his May 6, 2009 arrest, DOCCS calculated plaintiff's maximum expiration date for that conviction as April 30, 2021. (Id.) It then reclassified plaintiff as a Type Four, Returned Parole Violator, and tacked on the unserved remainder of plaintiff's 2004 sentence—two years,

6

nine months, and twenty-nine days—to calculate a new maximum expiration date of February 29, 2024. (Defs.' 56.1 ¶ 62; Counsel's Decl., Ex. P.) Parole officials were not involved in the calculation of plaintiff's maximum expiration date by DOCCS. (Defs.' 56.1 ¶ 64; McCartney Decl. ¶ 38.)

VI.    Proceedings in this Court

On November 26, 2012, plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, asserting fifteen "Causes of Action" against various combinations of the defendants. Plaintiff seeks $14 million dollars in damages, that defendants be terminated from their positions, and "injunctive relief preventing the Division of Parole from mandating me to participate or enroll in drug treatment upon my eventual release to parole supervision." (Compl. at 23–26, 29, ECF No. 1.) Plaintiff's motion for leave to proceed *in forma pauperis* was granted, but his claims for money damages against the Parole Department and individual defendants in their official capacities were dismissed as barred by the Eleventh Amendment. (ECF No. 7.) The Court also dismissed plaintiff's claims for injunctive relief except plaintiff's claim seeking correction of his parole file. (Id.) Plaintiff requested reconsideration of that order, (ECF No. 15), and defendants moved to dismiss the remainder of the complaint for failure to state a claim upon which relief can be granted. (ECF No. 19).

The Court denied plaintiff's motion for reconsideration, and granted defendants' motion only as to plaintiff's claim challenging defendants' delayed adjudication of his merit termination application. (ECF No. 31.) While the Court deemed that claim untimely, the Court found that plaintiff timely raised his other claims regarding defendant's: (1) denial of his merit termination application ("early termination claim"); (2) provision of a false statement in opposition to his drug diversion program participation ("diversion program claim"); and (3) miscalculating the end date—or maximum expiration date—of his 2004 sentence ("sentence miscalculation claim"). (Id.) The Court also rejected defendants' argument that

7

plaintiff's drug relapse disqualified him from any drug diversion program, in the absence of proof that such disqualification was inevitable. (Id.)

Plaintiff again moved for reconsideration of the Court's dismissal of his claim challenging defendants' delayed consideration of his merit termination application. (ECF No. 46.) On August 17, 2015, the Court denied plaintiff's motion for reconsideration.[4] The parties engaged in discovery and defendants, at the conclusion of discovery, moved for summary judgment on plaintiff's remaining claims. (ECF No. 70.) Defendants served their motion for summary judgment on plaintiff. (ECF No. 72.) After several extensions of time to file his opposition, (ECF Nos. 76, 84, 87), plaintiff served his 85-page "opposition" to defendants' motion. (ECF No. 94.) Plaintiff requested additional time to submit further briefing; however, the Court deemed the 85-page document to be plaintiff's entire opposition to defendants' motion. (ECF Entry, Nov. 3, 2015.) Defendants' filed their reply to plaintiff's opposition, (ECF No. 106), and Chief Judge Irizarry referred defendants' motion for summary judgment to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## DISCUSSION

### I.    Summary Judgment Standard

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such

---

[4] Defendants served their motion to dismiss prior to the Court's ruling and therefore oppose plaintiff's second motion for reconsideration in their memorandum of law. (Mem. at 7–8.) Because the Court has since denied plaintiff's motion for reconsideration, defendants' argument regarding plaintiff's request is moot.

that a reasonable jury could return a verdict for the nonmoving party.'" <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (quoting <u>Anderson</u>, 477 U.S. at 248).

When facing a summary judgment motion, a *pro se* party's submissions "must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'"" <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3sd 471, 474 (2d Cir. 2006) (emphasis in the original); <u>Parris v. Acme Bus Corp.</u>, 956 F. Supp. 2d 384, 391 (E.D.N.Y. 2013). However, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. <u>Anderson</u>, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." <u>Niagara Mohawk Power Corp. v. Jones Chem., Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (quoting <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998)). "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 252).

## II.    Eleventh Amendment Immunity

Defendants argue that New York State's sovereign immunity under the Eleventh Amendment bars plaintiff's claim for injunctive relief against the New York State Division of Parole ("DOP"). (Mem. at 6–7.) The Eleventh Amendment of the United States Constitution bars suits against states in federal court for money damages or equitable relief. <u>Va. Office for Protection & Advocacy v. Stewart</u>, 563 U.S. 247, 253 (2011); <u>N.Y.C. Health & Hospitals Corp. v. Perales</u>, 50 F.3d 129, 134 (2d Cir. 1995); <u>Harrison v. State of N.Y.</u>, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015). Even where federal question or diversity jurisdiction otherwise lies, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity" against a state. U.S. Const., amend. XI; <u>see</u> <u>Welch v. Tex. Dep't of Highways and Pub. Transp.</u>, 483 U.S. 468, 484 (1987) (holding that the Eleventh Amendment applies even to cases presenting a federal question).

Eleventh Amendment immunity extends to state agencies because these entities are arms of the

state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004). Prior to its merger with the New York State Department of Corrections and Community Supervision ("DOCCS"), the DOP was a New York state entity established by New York Executive Law § 259(1), and was thus entitled to Eleventh Amendment immunity. Boddie v. N.Y. State Div. of Parole, No. 08-CV-911 (KAM)(LB), 2009 WL 1033786, at *4 (E.D.N.Y. Apr. 17, 2009).[5] As it is now part of DOCCS, it is likewise immune from suit as a state agency. See Rother v. NYS Dep't of Corrections and Comm'ty Supervision, 970 F. Supp. 2d 78, 90 (N.D.N.Y. 2013) (dismissing claim against DOCCS because it is a state agency entitled to Eleventh Amendment immunity); Armstead v. Dep't of Corrections Comm'ty Supervision, No. 13-CV-88 (ENV)(JMA), 2013 WL 1312017, at *3 (E.D.N.Y. Mar. 28, 2013) (dismissing claims DOP and DOCCS as immune entities). The State of New York has not waived the defense of sovereign immunity in this case, nor has it otherwise consented to suit under § 1983. Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 39–40 (2d Cir. 1977); Armstead, 2013 WL 1312017, at *3. Moreover, Congress did not abrogate the states' sovereign immunity in passing § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (§ 1983 does not abrogate state sovereign immunity); Harrison, 95 F. Supp. 3d at 314 (same); True v. New York State Dep't of Corr. Servs., 613 F. Supp. 27, 31 (W.D.N.Y. 1984 (same as to § 1985); Finkelman v. New York State Police, No. 06 Civ. 8705 (JSR), 2007 WL 4145456, at *3 (S.D.N.Y. Nov. 15, 2007) (same for § 1986). Accordingly, the Eleventh Amendment bars all of plaintiff's claims against the DOP and those claims should be dismissed.

## III.    Heck "Favorable Termination" Requirement

A state prisoner seeking to attack the fact or duration of his confinement has only one remedy in federal court: to seek a writ of *habeas corpus* under 28 U.S.C. § 2254. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (*habeas corpus* relief is the "sole federal remedy" available to a state prisoner seeking to

---

[5] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.

challenge his confinement). As the Supreme Court in Heck v. Humphrey made clear, a civil rights action under 42 U.S.C. § 1983 cannot be used to challenge a state conviction. Heck, 512 U.S. 477, 486–87 (1994); Poventud v. City of New York, 750 F.3d 121, 133–34 (2d Cir. 2014).  Regardless of whether the relief sought is monetary or equitable relief, a prisoner may not bring a § 1983 suit "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005). So, "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*, 28 U.S.C. § 2254." Heck, 512 U.S. at 486–87.

The majority of plaintiff's instant complaint challenges the duration of his sentences for state convictions or for his parole revocation.  Plaintiff first argues that defendants wrongfully denied his application for a merit termination of his 2004 sentence. The Parole Department may grant a merit termination, ending a criminal sentence early, if the parolee meets certain conditions. DOCCS Directive 9221 (May 1, 2015) available at http://www.doccs.ny.gov/Directives/9221.pdf (last visited Aug. 29, 2016);[6] see also N.Y. Exec. Law § 259-j(1) (2009) (DOP authority to grant merit termination); N.Y. Correction Law § 205(1)–(3) (DOCCS authority to grant the same).  Whether or not plaintiff was eligible for a merit termination, his claim that he was entitled to a speedier release from parole supervision is the type of claim that falls directly within the ambit of Heck's favorable termination rule. See Wilkinson, 544

---

[6] The Court takes judicial notice of this publicly-available DOCCS directive. See Christman v. Skinner, 468 F.2d 723, 726 (2d Cir. 1972) (deeming it proper for trial court to take judicial notice of state prison regulations); Rivera v. EMTC Med. Dep't, No. 15 Civ. 2034 (AJN), 2016 WL 110529, at *2 n.1 (S.D.N.Y. Jan. 7, 2016) (taking judicial notice of DOCCS directive as matter of public record).

U.S. at 81 (explaining that a § 1983 action is barred if a plaintiff seeks to invalidate the duration of confinement "either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody"). Unless and until plaintiff invalidates his 2004 sentence, plaintiff is barred from challenging the duration of that sentence under § 1983. See Chapdelaine v. Comm'r, U.S. Parole Comm'n, No. 01 Civ. 7364 (FM), 2002 WL 31115545, at *6 (S.D.N.Y. Sept. 24, 2002) (prisoner's claim challenging fact or duration of parole is challenging custody and can only do so by seeking a writ of *habeas corpus*); Reed v. Callender, No. 99-1710 (FB), 1999 WL 33100655, at *2 (E.D.N.Y. Aug. 2, 1999) (same).

Similarly, plaintiff claims that defendants miscalculated the maximum expiration date (or length) of his 2004 sentence and seeks to shorten the duration of his sentence on his valid conviction. This claim is barred by Heck. See Gastelu v. Breslin, No. 03 CV 1339 (JG), 2005 WL 2271933, at *3–4 (E.D.N.Y. Sept. 12, 2005) (dismissing § 1983 claim that prisoner was unconstitutionally held beyond the expiration of his sentence as barred by the Heck favorable requirement requirement); Reed, 1999 WL 33100655, at *2 (dismissing inmate's § 1983 suit seeking recalculation of his maximum expiration date as barred by Heck).

Finally, plaintiff's claim that defendants denied him due process by delaying his parole revocation hearing, a challenge to the length of his imprisonment, is also barred by Heck.[7] The only prejudice plaintiff could have suffered from an unconstitutional delay in his parole revocation hearing is an impaired ability to contest the charge that he violated his parole (which he does not now contest, (Pl. Dep. 113:7–9)) and, potentially, a shorter sentence if his 2004 parole time were to run concurrent to his new sentence, (Compl. at 26). See Robb v. Norton, 394 F. Supp. 856, 858 (D. Conn. 1975) (describing the type of actual

---

[7] The Second Circuit has recognized a narrow exception to Heck's favorable termination requirement when *habeas* relief was never reasonably available to the plaintiff through no lack of diligence on his part. Teichmann v. New York, 769 F.3d 821, 828 (2d Cir. 2014) (citing Leather v. Ten Eyck, 180 F.3d 420, 424 (2d Cir. 1999)). Nothing in the record suggests that plaintiff's circumstances would qualify for this narrow exception.

prejudice a *habeas* petitioner must demonstrate to show that an unreasonable delay in a revocation hearing violated his due process rights). Even if plaintiff had an earlier revocation hearing, and parole was not revoked, plaintiff would not have been released back to parole supervision because he was incarcerated pursuant to his May 2009 arrest. See McCartney Decl., Ex. F (Custody Record); Morgan v. Fillion, No. 98 Civ 986 (DAB)(SEG), 2000 WL 235986, at *8-9 (S.D.N.Y. Jan. 31, 2008) (dismissing petitioner's claim that a delay in his parole revocation hearing violated his procedural due process rights because he was being held on a separate arrest and conviction during the delay and the hearing was held prior to his maximum expiration date). Here, no parole revocation hearing was held. (McCartney Decl., Ex. I; Defs.' 56.1 ¶ 60.) However, pursuant to New York Executive Law Section 259-i(3)(d)(iii), a parole revocation hearing is not required where a parolee is convicted of a new crime. See Curry v. Griffin, No. 09-CV-5226 (JS), 2012 WL 1379674, at *6 (E.D.N.Y. Apr. 20, 2012) (citing Keyes v. Juul, 270 F. Supp. 2d 327, 329 (E.D.N.Y. 2003)). Accordingly, any due process challenge to the defendants' failure to hold the revocation hearing is merged in to plaintiff's conviction on the 2009 charges. See Keyes, 270 F. Supp. 2d at 329 ("Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process rights by determining if the parolee has in fact violated one or more of the conditions of release in an important respect evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty.") (internal quotations and citations omitted).

At its core, plaintiff challenges the lack of a hearing prior to his parole revocation for the 2004 sentence, and the constitutionality of his further incarceration on that sentence. However, plaintiff fails to prove that either his 2004 conviction or the parole revocation has been reversed, expunged, or declared invalid. Plaintiff's claim is therefore barred under Heck. See Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) (plaintiff's claim that his parole revocation was the result of inadequate process is barred

under <u>Heck</u> absent showing that the parole revocation has been invalidated); <u>Hannah v. Davis</u>, No. 08-CV-0116 (MAT), 2008 WL 516750, at *2 (W.D.N.Y. Feb. 25, 2008) (dismissing § 1983 suit challenging procedural defect in parole revocation as barred by <u>Heck</u>); <u>Reed</u>, 1999 WL 33100655, at *2 (same).

## IV.    Opposition to Judicial Diversion Program

Plaintiff's remaining claim challenges the state court's denial of his application to enter a judicial drug diversion program in lieu of serving a term of imprisonment for his conviction stemming from his 2009 arrest. He asserts that in retaliation for his suit naming Staniszewski as a defendant in *Alexander* action, she opposed his application, informed MDTC Case Manager Meeks of a lawsuit plaintiff brought against a DOCCS correction officer for assault, misinformed Meeks that plaintiff had denied substance abuse to the Division of Parole, and failed to inform Meeks of plaintiff's more recent accomplishments, including that he had completed part time drug-counseling, abstained from drug use for 14 months before his relapse, attended college full-time, and had full-time employment. (Compl. ¶¶ 41, 45, 52; Opp'n at 78–79; Pl. Dep. 109:2–110:4.) Meeks relayed Staniszewski's statements in her report to the MDTC regarding plaintiff's diversion program application. (Compl., Ex. at 1.) Plaintiff also states that Meeks fabricated statements from personnel at the Daytop drug program plaintiff attended, stating that plaintiff left the program against clinical advice, though the specific program did not employ clinicians. (Opp'n at 79–80; Pl. Dep. at 105:6–106:11.) Plaintiff believes that defendants' opposition to his application caused the court to deny him entry into the diversion program, thus extending his term of imprisonment. (<u>See</u> Opp'n at 64.)

### A. Reconsideration of Plaintiff's Diversion Program Application

To the extent plaintiff seeks an order mandating his release, again that claim is barred by <u>Heck</u>. However, plaintiff seeks other relief, both injunctive and monetary. If plaintiff seeks reconsideration of his drug diversion application, his claim is not barred by <u>Heck</u>. A challenge to a diversion program determination is analogous to a challenge to the validity of a parole hearing, because neither authorize an

14

individual's confinement (like a conviction, sentence, or parole revocation hearing), but provide prospective discretionary relief. In the parole hearing context, the Supreme Court has held that a § 1983 claim seeking a new parole hearing is not barred by Heck because such relief does not guarantee a shorter prison term, only a new hearing at which parole authorities, in their discretion, may or may not shorten that term. Wilkinson, 544 U.S. at 82; cf. Guillory v. Boll, No. 12-CV-1771 (FJS)(DEP), 2013 WL 5304194, at *5–6 (N.D.N.Y. Sept. 19, 2013) (finding claim that corrections officers brought disciplinary charges in retaliation for inmate's grievances was not barred by Heck because proving retaliation did not necessarily undermine the disciplinary conviction). Similarly, here, a new diversion program hearing—if such relief is warranted or possible[8]—would only permit a new discretionary review. See People v. Carper, 997 N.Y.S.2d 579, 579 (App. Div. 4th Dep't 2015) (affording judicial diversion determinations "great deference" as discretionary decisions). Moreover, plaintiff may seek money damages for any constitutional violation, and correct errors in his parole file. Therefore, if plaintiff is seeking a new hearing, to correct his parole file, and money damages, these claims do not necessarily undermine the validity of a conviction. Thus, Heck would not bar these claims.

Plaintiff's claims regarding the denial of his diversion program application nevertheless fail to withstand defendants' motion for summary judgment. Liberally construing plaintiff's argument that defendants violated his due process rights by submitting false information regarding his diversion program application, he fails to state a claim upon which relief may be granted. To state a claim for a Fourteenth Amendment due process violation, the plaintiff must establish that he was deprived of a liberty interest that was created either by the Due Process Clause itself or state law. Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998). Here, neither the Constitution nor New York statutes place substantive limitations on

---

[8] Judicial diversion determinations are made prior to the entry of a plea of guilty or the commencement of trial. N.Y. Crim. Proc. Law § 216.05(McKinney's 2016). Plaintiff would be ineligible for program participation even if he was granted a new hearing because he has already been convicted. See id. § 216.00 (defining "eligible defendant" as one "charged" with a qualifying offense).

official discretion to grant or deny an application to participate in the Judicial Diversion Program. See N.Y. Crim. Proc. Law § 216.05(4) (an eligible defendant "may be allowed to participate in the judicial diversion program" when an authorized court finds he or she "should be" so permitted). Therefore, like other discretionary programs, the creation of New York's Judicial Diversion Program does not give rise to a liberty interest. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (requiring a showing that a state statute imposed substantive limitations on discretion regarding program participation to establish a liberty interest in that participation); cf. Abed v. Armstrong, 209 F.3d 63, 67 (2d Cir. 2000) (where good time credit is a discretionary matter, inmate has no liberty interest in the opportunity to earn good time credit); Romer v. Morgenthau, 119 F. Supp. 2d 346, 358 (S.D.N.Y. 2000) (citing Dugar v. Couglin, 613 F. Supp. 849, 854–57 (S.D.N.Y. 1984) ("[C]ases finding an interest protected by due process with respect to removal from a [temporary release program] do not require the recognition of a similar interest with respect to initial determinations regarding participation.")). Accordingly, as plaintiff cannot state a due process claim based on being denied participation in the Judicial Diversion Program, defendants' motion for summary judgment should be granted.

B.  First Amendment Retaliation

To prevail on a First Amendment retaliation claim under 42 U.S.C § 1983, plaintiff must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Vincent v. Sitnewski, 117 F. Supp. 3d 329, 335 (S.D.N.Y. 2015). "The Second Circuit has cautioned that retaliation claims by prisoners are 'prone to abuse' as '[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes.'" Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  Thus, even though "[p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the

16

government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right" courts must examine a prisoner's retaliation claim with "skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (internal quotation and citation omitted). During the relevant time period, plaintiff was either a prisoner or a parolee; however, the same standard applies in both contexts. See McCloud v. Kane, 491 F.Supp.2d 312, 317 (E.D.N.Y.2007); see also Gall v. U.S., 552 U.S. 38 (2007) ("inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled") (citing Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)).

Plaintiff's complaint satisfies the first prong for a retaliation claim as "[t]he filing of lawsuits is protected conduct for purposes of First Amendment claims." Guillory v. Haywood, No. 13-CV-1564 (MAD)(TWD), 2015 WL 268933, at *16 (N.D.N.Y. Jan. 21, 2015) (citing Colon, 58 F.3d at 872)). Although plaintiff has filed several lawsuits over the years, for the purpose of plaintiff's First Amendment retaliation claim, the Court finds that only the *Alexander* suit is relevant, as that complaint, which was filed on July 18, 2008, named Staniszweski and other Parole Department officers. See Alexander, 691 F. Supp. 2d at 315.

To satisfy the second prong for a retaliation claim, a plaintiff must identify the "adverse action" taken against them that "would deter a similarly situated individual of ordinary firmness from exercising . . . [their] constitutional rights." Gill v. Pidlypchak, 389 F.3d 379, 381, 383 (2d Cir. 2004) (citation and internal quotation marks omitted). The Court's inquiry "is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise." Ford v. Palmer, 539 F. App'x 5, 7-7 (2d Cir. 2013) (quoting Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (internal quotations omitted)). In the prisoner context, in evaluating what constitutes an adverse action, the Court remains mindful that "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered

adverse." Dawes, 239 F.3d at 491. Here, the Court finds that plaintiff's allegations regarding defendants' alleged "adverse actions" are conclusory and purely speculative. Medici Classics Prods., LLC v. Medici Grp., LLC, 683 F. Supp. 2d 304, 307 (S.D.N.Y. 2010) ("[Rule 56(e)'s requirement of 'specific facts showing a genuine issue for trial'" has particular relevance when a party's responsive documents are long on speculation and short on specific facts."); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 85 (2d Cir. 2005) ("The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment."). Thus, plaintiff fails to demonstrate that defendants' alleged actions constitute "adverse actions" for purposes of a First Amendment retaliation claim.

Plaintiff alleges that Meeks and Staniszewski's actions caused the court to deny plaintiff entry into the diversion program. Plaintiff alleges that Staniszewski, who he named in the *Alexander* complaint, misinformed Meeks that plaintiff had denied substance abuse to the Division of Parole. However, plaintiff does not allege that he told Staniszewski that he had relapsed in March 2009; rather, plaintiff testified at his deposition that he "hinted" to McClymont that he relapsed, saying that he was "limping towards the finish line," but admits that he did not explicitly admit his relapse to McClymont. (Pl. Dep. 110:10–112:5.) Plaintiff's suggestion that McClymont understood his "hint" to mean that he had relapsed is undermined by McClymont's March 18, 2009 chrono log entry, stating that plaintiff had denied illegal drug use. (McClymont Decl., Ex. B at 000131 ("P denies any illegal drug usage or act."). Moreover, there is no record evidence regarding what Staniszewski knew about plaintiff's relapse. Plaintiff also alleges that Staniszewski failed to inform Meeks of plaintiff's more recent accomplishments; however, plaintiff only speculates as to what Staniszewski told Meeks and there is no record evidence that plaintiff's recent accomplishments were not included in plaintiff's parole file. Therefore, plaintiff's allegations regarding

Staniszewski's role in the report that Meeks prepared for the diversion program fail to establish an adverse action.

Plaintiff also alleges that the report filed by Staniszewksi, in opposition to plaintiff's admission into the diversion program, constitutes an adverse action. However, plaintiff's participation in the diversion program is ultimately in the judge's discretion. This type of discretionary determination by someone other than a defendant does not generally give rise to claims of "adverse action." Compare Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (assault by prison officials); Graham v. Henderson, 89 F.3d 75, 80–81 (1996) (false misbehavior reports against plaintiff); Colon, 58 F.3d at 872–73 (planted contraband in plaintiff's cell); Jones v. Coughlin, 45 F.3d 865, 872–73 (2d Cir. 1995) (false misbehavior report resulting in 120 days of punitive segregation); Gill v. Hoadley, 261 F. Supp. 2d 113, 124 (N.D.N.Y. 2003) (false misbehavior report resulting in keeplock confinement for almost fifty days); cf. Islam v. Goord, No. 05 Civ. 7502 (RJH), 2006 WL 2819651, at *6 (S.D.N.Y. Sept. 29, 2006) (finding that defendant's threat to place plaintiff in protective custody and alleged improper investigation of plaintiff's grievance did not rise to the level of an "adverse action"). Moreover, it is hard to fathom that a similarly situated individual of ordinary firmness would be deterred from exercising his constitutional right to file a lawsuit, about the conditions of his parole, based on the possibility that parole may, in the future, oppose his participation in a discretionary drug diversion program. See Gill, 389 F.3d at 381. It is simply too speculative that a parolee would be deterred from filing a lawsuit, challenging the conditions of his parole and naming various parole officers, on the possibility that, two-years down the road, he might be re-arrested and the Parole Department would oppose his participation in a Judicial Diversion Program. Thus, the retaliatory conduct alleged here does not constitute an adverse action for the purpose of a First Amendment retaliation claim as the alleged conduct is "outside the ambit of constitutional protection." Dawes, 239 F. 3d at 493.

19

As to Meeks, who worked for the MDTC and not the Parole Department, plaintiff does not raise a constitutional claim regarding her actions. Plaintiff speculates that Meeks submitted false statements in her report in retaliation for plaintiff filing lawsuits, not against Meeks, but against various correction and parole officers. (Opp'n at 79–80; Pl. Dep. at 105:6–106:11.) To prove an adverse action, it is not required that the alleged retaliatory actor be named in the prior action. See e.g. Baskerville, 224 F. Supp. 2d at 730-32 (S.D.N.Y. 2002) (denying defendants' motion to dismiss plaintiff's retaliation claim where plaintiff's prior lawsuit was only against the State of New York and not the specific correction officers that plaintiff alleged took the adverse action.) However, plaintiff's conclusory allegation that Meeks falsified that she spoke to Shirley Wilson, the program director for the Daytop drug rehabilitation program, who reported that plaintiff left Daytop against clinical advice, is insufficient to withstand defendants' motion. Moreover, plaintiff fails to raise a material issue of fact regarding Meeks as there is no basis to conclude that her statement in her report was false.

Even assuming that the actions of Staniszewksi and Meeks could constitute adverse actions, plaintiff cannot establish a causal connection between his protected activity and the alleged adverse actions. In the prison context, "[t]he causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." Baskerville, 224 F. Supp. 2d 732. Courts consider several factors in determining whether a sufficient causal connection exists, including, *inter alia*, the temporal proximity between the protected activity and the "adverse acts" and statements by the defendant concerning his or her motivation. Id. (citing Colon, 58 F. 3d at 872-73.) Here, plaintiff cannot show temporal proximity between the protected conduct and the adverse actions. The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship. Espinal, 558 F.3d at 129 (internal quotations omitted). Therefore, Courts are allowed to "exercise [their] judgment about the permissible inferences that can be drawn from temporal

proximity in the context of particular cases." Id. (citations omitted).  According to plaintiff, defendants retaliated against him for his filing of the *Alexander* action; however, that action was filed in July 2008, almost two years prior to alleged retaliatory acts.[9] See Alexander, 691 F. Supp. 2d at 315. The passage of almost two years does not support a showing of temporal proximity. See Shaw v. McDonald, No. 14 CV 5856 (NSR), 2015 WL 8484570, at *5 (S.D.N.Y. Dec. 8, 2015), reconsideration denied, No. 14-CV-5856 (NSR), 2016 WL 828131 (S.D.N.Y. Feb. 22, 2016) (collecting cases) ("a one year gap is too attenuated to establish a causal relationship."); see also Baskerville, 224 F. Supp. 2d at 732 (no temporal proximity where a prior lawsuit was filed three years prior to the retaliatory act).  Moreover, plaintiff cannot point to anything in the record showing that defendants made any affirmative statements concerning a retaliatory motive in opposing plaintiff's participation in the program.  "Simply adding an allegation that [defendants] acted out of retaliatory motives is easy to do, but it is not enough." Dolberry v. Levine, 567 F. Supp. 2d 413, 420 (W.D.N.Y. 2008).  Here, plaintiff only relies on conclusions and speculation to allege that defendants' motivation in opposing his participation in the program was retaliatory.  Finally, as to Meeks, who was not named in the *Alexander* action, plaintiff fails to allege any prior incidents or involvement with Meeks to establish any plausible motivation for her to retaliate against him.  For these reasons, defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim should be granted.

---

[9] Defendant Staniszewski was dismissed from the *Alexander* lawsuit in June of 2009, over a year prior to the alleged retaliatory act. See Alexander, 691 F. Supp. 2d at 315.

21

## CONCLUSION

Accordingly, for the reasons set forth above, it is respectfully recommended that defendants' motion for summary judgment should be granted and plaintiff's action should be dismissed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: September 2, 2016
      Brooklyn, New York